NORTHWESTERN MUTUAL FIRE ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16147. Promulgated March 30, 1949.

*Jo D. Cook, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: This proceeding involves deficiencies in petitioner's income taxes for the years 1942 and 1943 in the respective amounts of $5,089.03 and $5,347.81. The petitioner claims refunds for the years 1942 and 1943 in the respective amounts of $10,183.13 and $10,854.73.

The deficiencies are due primarily to the disallowance of foreign tax credits claimed in the petitioner's income tax returns for the calendar years 1942 and 1943 in the respective amounts of $5,076.60 and $5,339.84 as income taxes paid to the Dominion of Canada. The respondent in the deficiency notice explained this disallowance as follows:

> The foreign tax credits claimed in your income tax returns for the calendar years 1942 and 1943, in the respective amounts of $5,076.60 and $5,339.84, as income taxes paid to the Dominion of Canada, have been disallowed for the reason that the stated taxes do not constitute "income, war profits or excess profits taxes paid in lieu of a tax upon income, war profits, or excess profits otherwise generally imposed" by Canada. The evidence indicates that the taxes in question were in the nature of an excise imposed under the Special War Revenue Act of Canada and therefore do not meet the requirements of section 131 of the Internal Revenue Code in respect to allowable credits.

> For the stated reasons it has been determined also that your claims for refund in the respective amounts of $10,183.13 and $10,854.73 should be disallowed for the years 1942 and 1943. The claims for refund are disallowed on the additional ground that a proper application of the provisions of section 131 of the Internal Revenue Code negatives the use of investment income as the basis for computing the limitation factor provided for under subsection (b) thereof, in the case of a mutual insurance company (other than life or marine) paying a tax based upon "the gross amount of income" as defined in section 207 of the Internal Revenue Code.

The petitioner, by appropriate assignments of error, contests these adjustments and claims refunds.

The case was submitted upon a stipulation of facts and joint exhibits, which are adopted as our findings of fact. They may be summarized as follows:

The petitioner is a mutual fire insurance corporation, organized and operating under the laws of the State of Washington, and is engaged in the business of writing insurance against the perils of fire and allied lines in all states of the United States and in Canada, with its principal office in Seattle, Washington. Its income tax returns for the years 1942 and 1943 were prepared on the accrual basis and were filed with the collector of internal revenue for the district of Washington at Tacoma, Washington, within and under extensions of time allowed by the Commissioner.

In the years 1942 and 1943 the petitioner paid to the Dominion of Canada amounts in Canadian funds equivalent to $15,272.16 and $16,-202.54, respectively, in United States funds in taxes in accordance with

the provisions of the Canadian Special War Revenue Act of 1915, as amended in 1942.[1] That tax was based upon the "net premiums" of petitioner on its business in Canada and for 1942 and 1943 the tax rate applicable to petitioner was 3 per cent.

In petitioner's returns for the years 1942 and 1943 it claimed foreign tax credits in the respective amounts of $5,076.60 and $5,339.84.

The petitioner's gross amount of income for the years 1942 and 1943 from all sources was $6,716,320.72 and $7,045,067.97, respectively, and its gross amount of income from sources in the Dominion of Canada (converted to United States funds) was $507,681.54 and $533,987.07, respectively.

In the years 1942 and 1943 the petitioner's normal tax net income from all sources was $126,451.85 and $151,828.23, respectively, while its normal tax net income from sources in the Dominion of Canada (converted to United States funds) was $37,843.46 and $40,943.06, respectively.

During the years 1942 and 1943 petitioner was not liable to tax on its net income from Canadian business under the provisions of the Canadian Income War Tax Act of 1917, as amended by chapter 97,[2] the provisions of which are set forth in the Revised Statutes of Canada of 1927.

---

[1] [Special War Revenue Act of 1915, contained in the Revised Statutes of Canada of 1927, as amended in 1942 by ch. 32 of the Special War Revenue Act, part III.]

Section 13. Definitions.—In this Part, unless the context otherwise requires

\*     \*     \*     \*     \*     \*     \*

(f) "Net premiums" means, in the case of a company transacting life insurance, the gross premiums received by the company other than the consideration received for annuities, less premiums returned and less the cash value of dividends paid or credited to policyholders ; and, in the case of any other company, the gross premiums received or receivable by the company or paid or payable by the insured less the rebates and return premiums paid on the cancelation of policies ; provided that in the case of a mutual company which carries on business on the premium deposit plan and in the case of an exchange "net premiums" means the actual net cost of the insurance to the insured during the taxation period together with interest on the excess of the premium deposit over such net cost at the average rate earned by the company on its funds during the said period ;

\*     \*     \*     \*     \*     \*     \*

Section 14. Tax on certain insurance companies upon net premiums.—

1. Every company authorized under the laws of the Dominion of Canada or of any province thereof, to transact the business of insurance, other than an association of persons formed on the plan known as Lloyds, a mutual company not carrying on the business of life insurance, and an exchange, shall pay to the Minister a tax of two per centum upon the net premiums received by it in Canada less net premiums paid for reinsurance to companies or associations to which this section applies, during the year 1941 and each calendar year thereafter.

2. Every association of persons formed on the plan known as Lloyds, and every mutual company not carrying on the business of life insurance and not carrying on business on the premium deposit plan, authorized under the laws of the Dominion of Canada or of any province thereof, to transact the business of insurance, shall pay to the Minister a tax of. three per centum upon the net premiums received by it in Canada, less net premiums paid for reinsurance to companies or associations to which this section applies, during the year 1941 and each calendar year thereafter.

3. Every mutual company authorized under the laws of the Dominion of Canada or of any province thereof, to transact the business of insurance and which carries on business on the premium deposit plan and every exchange so authorized shall pay to the Minister a tax of four per centum upon the net premiums received by it in Canada during the calendar year 1941 and each calendar year thereafter.

[2] Section 4. Incomes not liable to tax.—The following income shall not be liable to taxation hereunder :

\*     \*     \*     \*     \*     \*     \*

Prior to the year 1942 the petitioner was required by the provisions of the Special War Revenue Act of 1915 to pay to the Dominion of Canada a tax of 1 per cent on its net premiums from its business within the Dominion of Canada.[3]

In 1942 the Dominion of Canada amended the Special War Revenue Act of 1915 by the enactment of chapter 32 of the Statutes of 1942, heretofore set out, increasing the net premium tax on all fire insurance companies doing business in Canada, including the petitioner and the basis for said tax was the "net premiums" of said companies from their business within the Dominion of Canada. For all mutual fire insurance companies such as the petitioner, not subject to taxation on their net income under the provisions of the Canadian Income War Tax Act of 1917, the rate was increased from 1 to 3 per cent. For all fire insurance companies which were subject by Canadian law to taxation on their net income under the Income War Tax Act of 1917 (which did not include this petitioner) the rate was increased from 1 to 2 per cent.

In the year 1946 the Canadian revenue measures were revised and the Income War Tax Act originally enacted in 1917 was amended so that mutual fire insurance companies such as petitioner (excepting only those mutual fire insurance companies deriving their premiums wholly from the insurance of churches, schools, or other religious, educational, or charitable institutions) were made subject to the general income tax law of Canada.[4] Prior to the enactment in 1946 of

(g) Mutual corporations.—The income of mutual corporations not having a capital represented by shares, no part of the income of which inures to the profit of any member thereof, and of life insurance companies except such amount as is credited to shareholders' account; * * *

[3] Special War Revenue Act of 1915, ch. 179, part 3:

"Section 14. Every company, licensed or registered or otherwise authorized to transact in Canada or in any province thereof, the business of insurance shall pay to the Minister a tax of one per cent upon the net premiums received by it in Canada on and after the first day of January in any year."

[4] [Canadian Income War Tax Act of 1917, ch. 28, contained in the Revised Statutes of Canada of 1927, ch. 97, as amended by part I, sec. 3, and part II, sec. 4].

[Part I.] Section 3. "Income."—1. For the purposes of this Act, "income" means the annual net profit or gain or gratuity, whether ascertained and capable of computation as being wages, salary, or other fixed amount, or unascertained as being fees or emoluments, or as being profits from a trade or commercial or financial or other business or calling, directly or indirectly received by a person from any office or employment, or from any profession or calling, or from any trade, manufacture or business, as the case may be whether derived from sources within Canada or elsewhere; and shall include the interest, dividends or profits directly or indirectly received from money at interest upon any security or without security, or from stocks, or from any other investment, and, whether such gains or profits are divided or distributed or not, and also the annual profit or gain from any other source.

* * * * * * *

[Part II.] Section 4. Incomes not liable to tax.—The following income shall not be liable to taxation hereunder:

* * * * * * *

(g) Mutual corporations.—The income of mutual corporations not having a capital represented by shares, no part of the income of which inures to the benefit of any member thereof, except mutual insurance corporations that do not derive their premiums wholly from the insurance of churches, schools or other religious, educational or charitable institutions * * *.

the above amendment to the Income War Tax Act of 1917, mutual fire insurance companies such as petitioner were not liable to tax under the provisions of the Income War Tax Act of 1917, as hereinabove set out.

Concurrent with the above change in the Income War Tax Act of 1917, the Special War Revenue Act of 1915, as amended in 1942, was amended further changing the name of the act from "Special War Revenue Act" to the "Canadian Excise Tax Act," and that amendment further provided that the rate of tax upon the net premiums for mutual fire insurance companies, such as petitioner, should be reduced from 3 per cent to 2 per cent.[5]

In 1942 and 1943 the taxes imposed under the Special War Revenue Act of 1915, as amended, and the Income War Tax Act of 1917, as amended, were paid to the Minister of National Revenue, sometimes referred to as the Minister of Finance.

In the years 1942 and 1943 the administrative details of collection and auditing of taxes payable by insurance companies under the Special War Revenue Act of 1915, as amended, and the auditing of income tax returns of insurance companies which were subject to the provisions of the Income War Tax Act, as amended, were handled by the Department of Insurance.

In the years 1942 and 1943 the details of collection and auditing of taxes other than taxes on insurance companies payable under the Special War Revenue Act of 1915, as amended, and the general administration and the auditing of returns of taxpayers other than insurance companies under the Income War Tax Act of 1917 were handled by the Department of National Revenue.

In its returns for the years 1942 and 1943 and in "The Statement in Support of Credit for the Foreign Tax Paid" (Form 1118) for those years, petitioner computed the amount of credit on the gross amount of income for each year which constituted its taxable income and formed the basis under the statute for determining the amount of tax due in this country. On such basis and using the ratio of the total gross income from Canada ($507,681.54 for 1942 and $533,987.07 for 1943) to total gross income in its returns from all sources for those years ($6,715,077.99 for 1942 and $7,044,271.09 for 1943), the amounts of the credits so computed were $5,076.60 and $5,339.84 for the years 1942 and 1943, respectively. These claimed credits were disallowed by respondent in the deficiency notice.

---

[5] Special War Revenue Act of 1915, as amended by ch. 65, Laws of 1946, sec. 14 :

"Section 14. 1. Every company authorized under the laws of the Dominion of Canada or of any province thereof, to transact the business of insurance, other than an association of persons formed on the plan known as Lloyds, and an exchange, shall pay to the Minister a tax of two per centum upon the net premiums received by it in Canada less net premiums paid for reinsurance to companies or associations to which this section applies, during the year 1947 and each calendar year thereafter.

In its claims for refunds for 1942 and 1943 and in "The Statements in Support of Credit for Foreign Taxes" which were attached thereto, petitioner claimed that the credit for each year should be computed and determined upon the basis which the ratio of the "normal tax net income" from sources in Canada bears to the "normal tax net income" from all sources, i. e., in the ratio which the "normal tax net income" of $37,843.46 from Canadian sources bears to the "normal tax net income" of $126,451.85 from all sources for the year 1942; and in the ratio which the "normal tax net income" of $40,943.06 from Canadian sources bears to "normal tax net income" of $151,828.23 from all sources for the year 1943.

The questions presented by the pleadings and the evidence in this proceeding are:

(1) Whether petitioner is entitled to a foreign tax credit under the provisions of section 131 of the Internal Revenue Code on account of the tax on its net premiums received in the Dominion of Canada and imposed by and paid to that country for the taxable years 1942 and 1943 pursuant to the provisions of the Canadian Special War Revenue Act of 1915, as amended.

(2) If it should be determined that such credit is allowable, then the further question is whether the limitation upon the amount of the foreign tax credit for insurance companies such as petitioner is to be measured on the basis of the ratio of the "normal tax net income" from Canadian sources to "normal tax net income" from all sources or on the basis of the ratio of the taxable amount of income from Canadian sources to the taxable amount of income from all sources. We do not get to the second question unless the first is decided in petitioner's favor.

Petitioner concedes that, prior to the amendment of section 131 by the Revenue Act of 1942, the decisions of the courts were against it. Two of those cases were *Continental Insurance Co.*, 40 B. T. A. 540, and *St. Paul Fire & Marine Insurance Co.* v. *Reynolds*, 44 Fed. Supp. 863. But petitioner strongly contends that, by the enactment of section 131 (h), carried in the 1942 Revenue Act and applicable to all taxable years after December 31, 1941, Congress broadened the base for the allowance of these foreign income tax credits and included in such credit allowance taxes imposed on a corporation "in lieu" of an income tax. Petitioner contends that the taxes for which it here claims credit were levied by the Dominion of Canada "in lieu" of income taxes.

Respondent contends that the Canadian tax on petitioner's net premiums for which credit is claimed is not a tax paid "in lieu of a tax upon income," as that phrase is used in subsection (h) of section 131, which may be allowed as a credit under the provisions of section

131 (a) (1), but is an excise tax or a business privilege tax. The pertinent provisions of section 131 of the Internal Revenue Code are printed in the margin.[6] Subsection (h) of section 131 was adopted as section 158 (f) of the Revenue Act of 1942. At the time of the enactment of the above amendment to the Internal Revenue Code the Senate Finance Committee made the following pertinent comment in its report (Rept. No. 1631, 77th Cong., 2d sess., p. 131) :

Your committee believes further amendments should be made in section 131. Under that section as it now stands, a credit is allowed against United States Tax for income, war profits, or excess profits taxes paid or accrued to any foreign country or to any possession of the United States. In the interpretation of the term "income tax," the Commissioner, the Board, and the Courts have consistently adhered to a concept of income tax rather closely related to our own, and if such foreign tax was not imposed upon a basis corresponding approximately to net income it was not recognized as a basis for such credit. Thus, if a foreign country in imposing income taxation authorized, for reasons growing out of the administrative difficulties of determining net income or taxable basis within that country, a United States domestic corporation doing business in such country to pay a tax in lieu of such income tax but measured, for example, by gross income, gross sales or a number of units produced within the country, such tax has not heretofore been recognized as a basis for credit. Your committee has deemed it desirable to extend the scope of this section. Accordingly, subsection (f) of section 160 provides that the term "income, war profits, and excess profits taxes" shall, for the purpose of sections 131 and 23 (c) (1), include a tax paid by a domestic taxpayer in lieu of the tax upon income, war profits, and excess profits taxes which would otherwise be imposed upon such taxpayer by any foreign country or by any possession of the United States. * * *

The premium tax here involved was first imposed by the provisions of the Special War Revenue Act of Canada which was enacted in 1915. The first income tax law of Canada, known as the Income War Tax Act, was enacted in 1917. Both acts have been in force since these dates and have been amended from time to time. The 1917 income tax act excepted from its provisions the income of mutual corporations such as petitioner not having a capital represented by shares, no part of the income of which inured to the profit of any member thereof. The rates of the net premium tax levied by the Special War Revenue

---

[6] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter, except the tax imposed under section 102, shall be credited with :

(1) CITIZENS AND DOMESTIC CORPORATIONS.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States ; and

* * * * * *

(h) CREDIT FOR TAXES IN LIEU OF INCOME, ETC., TAXES.—For the purposes of this section and section 23 (c) (1), the term "income, war-profits, and excess-profits taxes" shall include a tax paid in lieu of a tax upon income, war-profits, or excess-profits otherwise generally imposed by any foreign country or by any possession of the United States.

[Subsection (h) was added to the Internal Revenue Code by section 158 (f) of the Revenue Act of 1942.]

Act of 1915 were increased by an amendment to that act in 1942 so that mutual fire insurance companies such as petitioner had their rates increased to 3 per cent. In 1946 the Special War Revenue Act of 1915, as amended, was again amended, decreasing the rate of tax, and the name of the act was changed to the "Canadian Excise Tax Act." In 1946, as a result of an amendment to the Income War Tax Act of 1917, petitioner became subject to the income tax act, but the tax on net premiums under the Special War Revenue Act was not removed. It was decreased from 3 per cent to 2 per cent.

The term "in lieu of" means in place of, instead of, or substituted for. See Webster's New International Dictionary (2d Ed., Unabr.). *State* v. *Minneapolis & St. L. R. Co.*, 283 N. W. 244; *Massachusetts Bonding & Insurance Co.* v. *Rutley Construction Co.*, 287 N. Y. S. 662; 159 Misc. 392. That the Canadian premium tax does not qualify as a tax "in lieu of a tax upon income" seems to us to be quite apparent from the nature of the tax and from its history as set forth above. Prior to the enactment of subsection (h), *supra*, it had been held that the Canadian premium tax was not an income tax within the meaning of section 131 (a) (1) of the Revenue Acts of 1932 and 1934 (similar to section 131 (a) (1) of the code) but was in the nature of an excise tax. *St. Paul Fire & Marine Insurance Co.* v. *Reynolds*, *supra; Continental Insurance Co.*, *supra*. Cf. *Helvering* v. *Queen Insurance Co.*, 115 Fed. (2d) 341. In the *Continental Insurance Co.* case we had before us the Special Canadian War Revenue Act of 1915 before it was amended by the War Revenue Act of 1942, and of it we said:

* * * The law in question imposed a tax of 1 per cent upon the net premiums received by an insurance company in Canada, less net premiums paid for reinsurance to other companies subject to the act. Net premiums were defined as gross premiums received, less rebates and returns. Thus the tax was imposed upon the gross premiums for risks taken by the company. The insurance did not have to result in a profit to subject the company to the tax. It was more like an excise tax upon the privilege of doing business than like an income tax. * * *

In *St. Paul Fire & Marine Insurance Co.* v. *Reynolds*, *supra*, the court said: "Taxes imposed on insurance premiums for the privilege of transacting business long have been designated as an 'excise tax.'" An excise tax is a charge for the privilege of following an occupation or trade, or carrying on a business. *Vinup* v. *City of Seattle*, 120 Pac. (2d) 464; 11 Wash. (2d) 630; *Saviers* v. *Smith*, 128 N. E. 269; 101 Ohio St. 132. Cf. *Keasbey & Mattison Co.* v. *Rothensies*, 133 Fed. (2d) 894; *Commissioner of Insurance* v. *Commonwealth Mutual Liability Insurance Co.*, 32 N. E. (2d) 231; 308 Mass. 385.

We think it clear from the Senate Finance Committee's Report No. 1631, heretofore quoted, that what Congress had in mind in providing

in section 131 (h) for a credit for a tax "in lieu of tax upon income," was a tax which was clearly a substitute for an income tax and not a tax imposed for the privilege of doing business in a foreign country. If the Canadian Government had first imposed the premium tax upon insurance companies in connection with the enactment of its Income War Tax Act in 1917, there might be some justification for saying that it was a substitute for a tax upon income and was to be measured by the amount of premiums collected, but this premium tax was imposed in 1915, before the income tax law was enacted. It was an excise tax at that time and its character as such was not changed by the subsequent enactment of the Income Tax Law of 1917. When the Canadian Government in 1946 decided to subject mutual insurance companies such as petitioner to income tax, it did not eliminate the tax upon net premiums collected by such mutual insurance companies, it only decreased them. This, we think, as well as the whole history of the Canadian premium tax, clearly indicates that Canada considered the premium tax as a separate and distinct tax from the income tax and not "in lieu" thereof. The fact that our Congress in the 1942 Revenue Act added section 131 (h) so as to broaden the scope of the credit allowable under 131 (a) (1) did not, in our opinion, change the character of the Canadian premium tax levied by its Special War Revenue Act of 1915, as amended, and make of it a tax levied in lieu of an income tax.

The instant case is distinguishable from *New York & Honduras Rosario Mining Co.* v. *Commissioner*, 168 Fed. (2d) 745, reversing 8 T. C. 1232, and *Santa Eulalia Mining Co.*, 2 T. C. 241. Both cases involved the allowance of a credit under section 131 (a) (1) without reference to the later provisions contained in 131 (h). In the *New York & Hunduras Rosario Mining Co.* case the court said with reference to the tax there involved:

What a tax is called does not determine whether it is an income tax or an excise tax. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 145. But we think it not without significance that Honduras in its Mining Code does lay genuine excises, with forfeiture of the mining company's rights for non-payment, and also a tax on "liquid profits," without such forfeiture for non-payment, which is called an "income tax" in the contract approved by the national congress. Moreover, the tax on "liquid profits" is applicable to all miners, not merely to United States companies, and in general characteristics is indistinguishable from our own income tax. * * *

In the *Santa Eulalia Mining Co.* case, *supra*, after analyzing the tax in question, we said:

Thus, we have a tax which is repeatedly referred to in the levying statute as an income tax and which is computed on the basis of petitioner's gross revenue from its mining properties. Although the method of determining the tax does not conform strictly to that by which income taxes are computed under our own laws, we do not think that that determines the nature of the tax.

Thus, in both of the above cases it was determined that the tax in question was in effect an income tax and, therefore, allowable as a credit under section 131 (a) (1) of the code.

In the instant case, as we have endeavored to point out, the Canadian net premiums tax was neither an income tax nor a tax levied in lieu of an income tax. Therefore, the credit which petitioner claims cannot be allowed.

Having decided that petitioner is not entitled to the credit under section 131 (a) (1) for the premium taxes paid to Canada, it is unnecessary to discuss issue 2.

Reviewed by the Court.

*Decision will be entered for the respondent.*

VAN FOSSAN, *J.*, dissents.